**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION**

|  |  |
|---|---|
| PINE 9 SOLUTIONS LLC, | |
| Plaintiff, | |
| v. | No. 25-cv- |
| THE PARTNERSHIPS AND UNINCORPORATED ASSOCIATIONS IDENTIFIED IN SCHEDULE "A", | |
| Defendants. | |

**COMPLAINT**

Plaintiff Pine 9 Solutions LLC ("Plaintiff"), by and through its undersigned counsel, hereby files this Complaint for copyright infringement under the Copyright Act, and trademark infringement and false designation of origin under the Lanham Act against the Partnerships and Unincorporated Associations Identified in Schedule "A"[1] (together, "Defendants"). In support hereof, Plaintiff states as follows:

## I.    JURISDICTION AND VENUE

1.    This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Copyright Act, 17 U.S.C. § 101, et seq, the Lanham Act, 15 U.S.C. § 1051, et seq., 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants, since each Defendant directly targets business activities toward consumers in the United States, including Indiana, through their operation of or assistance in the operation of the fully interactive, commercial internet stores

---

[1] Schedule A lists Defendant's identifying information (Merchant Name, Merchant ID, Product ID) and the corresponding use of Plaintiff's Intellectual Property.

operating under the aliases identified in Schedule A attached hereto (the "Seller Aliases"). Specifically, each of the Defendants directly reaches out to do business with Indiana residents by operating or assisting in the operation of one or more commercial, interactive e-commerce stores that sell products using or bearing infringing versions of Plaintiff's federally registered copyrighted works and/or using counterfeit versions of Plaintiff's federally registered trademark directly to Indiana consumers. In short, each Defendant is committing tortious acts in Indiana, is engaging in interstate commerce, and has wrongfully caused Plaintiff substantial injury in the State of Indiana.

## II.    INTRODUCTION

3.    Plaintiff filed this action to combat online infringers and counterfeiters who trade upon Plaintiff's reputation and goodwill by (1) using Plaintiff's copyrighted photographs (Reg. Nos. VA 2-451-615 and VA 2-451-629) (the "Pine 9 Works") in connection with the sale and advertising of the infringing products; and/or (2) selling and/or offering for sale unauthorized and unlicensed counterfeit and infringing products using counterfeit versions of Plaintiff's federal registered trademark  (Reg. No. 6,870,015) (the "Pine 9 Trademark"). *See* __Exhibit 1__. The Defendants created internet stores (the "Defendant Internet Stores" or the "Stores") by the dozens and designed them to appear to be selling genuine copies of Plaintiff's Pine 9 branded products when in fact the Stores are selling counterfeit versions to unknowing customers, and/or making, using, offering for sale, selling, and/or importing into the United States for subsequent sale or use infringing products to unknowing consumers.

4.    The Defendant Internet Stores share unique identifiers, such as similar design elements of the infringing products offered for sale and, on information and belief, these similarities suggest that the Defendant Internet Stores share common manufacturing sources, thus

establishing the Defendants' counterfeiting and infringing operations arise out of the same transaction, occurrence, or series of transactions or occurrences. Defendants have gone to great lengths to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation, including changing the names of their Stores multiple times, opening new Stores, helping their friends open Stores, and making subtle changes to their products. Plaintiff has been forced to file this action to combat Defendants' willful infringement of Plaintiff's copyrighted works and registered trademark, as well as to protect unknowing consumers from purchasing infringing products over the Internet. Plaintiff has been and continues to be irreparably damaged both through consumer confusion, dilution, and tarnishment of its valuable trademark and brand as a result of Defendants' actions and seek injunctive and monetary relief.

### III.    THE PARTIES

### Plaintiff Pine 9 Solutions LLC

5.    Plaintiff is a family-owned New Hampshire private limited liability company and is the creator and seller of Pine 9 branded products, which are both standard and hand-crafted high-quality, durable fishing rod holsters designed to allow anglers to comfortably and safely carry fishing rods (collectively, the "Pine 9 Products"). Plaintiff sells these products through its brand Pine 9 Holsters, which allows consumers to purchase the product online through the company's authorized e-store on its official website. The Pine 9 Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards and innovative designs. Among the purchasing public, genuine Pine 9 Products are instantly recognizable as such. The Pine 9 Trademark has come to symbolize high quality, and the Pine 9 Products are among the most recognizable fishing rod holsters in the United States.

6.    Among Plaintiff's most important assets is the intellectual property associated with its Pine 9 brand. Specifically, Plaintiff is the assignee and owner of several U.S. trademark and copyright registrations used to identify innovative products that it markets, sells, and licenses. Defendants' sales of the infringing products in violation of Plaintiff's trademark and copyright rights are irreparably damaging Plaintiff.

7.    Plaintiff is the owner of two United States Copyright Registrations. The registration information for the Pine 9 Works and copies of the corresponding images are shown in **Exhibit 1** attached hereto. Upon information and belief, the copyright registrations have an effective date that predates the Defendants' acts of copyright infringement.

8.    Since their first publication, the Pine 9 Works have been used to sell the Pine 9 Products. Plaintiff's products and their accompanying copyrighted works have been the subject of substantial and continuous marketing and promotion by Plaintiff throughout the United States and, due to its strong internet presence, throughout the entire world.

9.    Among the exclusive rights granted to Plaintiff under the U.S. Copyright Act are the exclusive rights to reproduce, distribute, and display the Pine 9 Works to the public.

10.    Plaintiff distributes and retails the high-quality Pine 9 Products within Indiana under the federally registered trademark  (Reg. No. 6,870,015). Plaintiff's Pine 9 Trademark has been used in the United States in connection with the advertisement, design, distribution, and offer for sale of its Pine 9 Products. The Pine 9 Trademark has become synonymous with the company's exacting quality standards. The unique designs of the Pine 9 Products have achieved substantial popularity and recognition. Since its establishment, Plaintiff has introduced several variations of designs through its various e-commerce marketplaces and authorized retailers worldwide, including in the United States and Indiana. Plaintiff's unique products have been

advertised with its federally registered trademark. Plaintiff continues to heavily advertise its unique products on all its e-commerce marketplaces, social media, advertisements, and product demonstration videos to educate consumers on both its products and trademarked name. Its websites and social media feature original content, reviews, and testimonials for the Pine 9 Products.

11.     Plaintiff sells its genuine Pine 9 Products through the Company's website[2]. The Pine 9 Products have become enormously popular and even iconic, driven by Plaintiff's exacting quality standards. Among the purchasing public, genuine Pine 9 Products are instantly recognizable as such. In the United States and around the world, the Pine 9 brand has come to symbolize high quality, and Pine 9 Products are among the most recognizable in the United States.

12.     The Pine 9 Trademark is distinctive and identifies the merchandise as goods originating from the Plaintiff. The registration for the Pine 9 Trademark constitutes prima facie evidence of their validity and of Plaintiff's exclusive right to use the Pine 9 Trademark pursuant to 15 U.S.C. § 1057(b). The Pine 9 Trademark has been continuously used and never abandoned since its first use.

13.     Plaintiff has expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the Pine 9 Trademark. As a result, products bearing the Pine 9 Trademark is widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality fishing rod holsters sourced from Plaintiff. The Pine 9 Products have become among the most popular of their kind in the U.S. and the world. The widespread fame, outstanding reputation, and significant goodwill associated with the Pine 9 brand have made the Pine 9 Trademark invaluable assets of Plaintiff.

**The Defendants**

---

[2] https://pine9holsters.com/

14.    Defendants are unknown individuals and entities who conduct business targeting customers in the United States, including within the state of Indiana and in this Judicial District, through the operation of fully interactive commercial websites and online commercial marketplaces operating under the e-commerce stores under the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to Plaintiff. On information and belief, Defendants reside and/or operate in foreign jurisdictions and redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rules of Civil Procedure 17(b). Each Defendant targets the United States, including Indiana, and has offered to sell and, on information and belief, has sold and continues to sell counterfeit products to consumers within the United States, including Indiana, and in this Judicial District.

15.    On information and belief, Defendants, either individually or jointly, operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto, and design these stores to appear to be selling genuine Pine 9 Products, while they actually sell counterfeits of Plaintiff's Pine Products. The tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to learn the precise scope and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## IV.    THE DEFENDANTS' UNLAWFUL CONDUCT

16.    The success of Plaintiff's brand has resulted in significant infringement and counterfeiting. Consequently, Plaintiff has implemented an anti-counterfeiting program that involves investigating suspicious websites and online marketplace listings identified in proactive Internet sweeps. Recently, Plaintiff has identified many fully interactive e-commerce stores on

online marketplace platforms such as, but not limited to Alibaba, AliExpress, Amazon, Amazon, eBay, Shein, Shopify, Temu, Walmart, and Wish, operating under the Seller Aliases, and offering for sale, completing sales, and exporting counterfeit products to consumers in this Judicial District and throughout the United States. Defendants have persisted in creating new Seller Aliases.

17.    E-commerce sales, including e-commerce internet stores like those of Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States. *See* **Exhibit 2**, U.S. Customs and Border Protection, *Intellectual Property Rights Seizure Statistics, Fiscal Year 2024*. According to Customs and Border Patrol's ("CBP") report, from Fiscal Year (FY) 2020 to FY 2024, the total number of goods seized for IPR violations has more than doubled. In addition to seizure, CBP executed 99,959 alternative enforcement actions, such as abandonment and destruction. *Id.* China and Hong Kong are consistently the top two for IPR seizures. In FY 2024, seizures from China and Hong Kong accounted for approximately 90% of the total quantity seized. *Id.* The vast majority of IPR seizures continue to take place within the express consignment and mail shipping methods. In FY 2024, 97% of IPR seizures in the cargo environment occurred in de minimis shipments. *Id.* Counterfeit and pirated products account for billions of dollars in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

18.    Groups of counterfeiters, such as Defendants here, are typically in communication with each other. They regularly participate in QQ.com chat rooms and communicate through websites such as sellerdefense.cn, kaidianyo.com, and kuajingvs.com, where they discuss tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

19.    Counterfeiting rings take advantage of the anonymity provided by the internet, which allows them to evade enforcement efforts to combat counterfeiting. For example,

counterfeiters take advantage of the fact that marketplace platforms do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." *See* **Exhibit 3**, Daniel C.K. Chow, Alibaba, Amazon, and Counterfeiting in the Age of the Internet, 41 Nw. J. Int'l. L. & Bus. 24 (2020). Additionally, "Internet commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of counterfeits and counterfeiters." *Id.* at 25. Therefore, with the absence of regulation, Defendants may and do garner sales from Indiana residents by setting up and operating e-commerce internet stores that target United States consumers using one or more aliases, offer shipping to the United States, including Indiana, accept payment in U.S. dollars, and, on information and belief, have sold counterfeit products to residents of Indiana.

20.    Upon information and belief, at all times relevant hereto, the Defendants in this action have had full knowledge of Plaintiff's ownership of the Pine 9 Trademark and Copyrights ("Pine 9 Intellectual Property"), including its exclusive right to use and license such intellectual property and their associated goodwill. Defendants' Internet Stores also use the same pictures to advertise their infringing product that Plaintiff uses on its webpage and social medias to sell and advertise its genuine and original Pine 9 Products, sowing further confusion among potential purchasers.

21.    Defendants go to great lengths to conceal their identities by using multiple fictitious names and addresses to register and operate their massive network of Defendant Internet Stores. Other Defendant domain names often use privacy services that conceal the owners' identity and contact information. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A of this

Complaint, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of the many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their massive counterfeiting operation, and to avoid being shut down.

22.     The infringing products for sale in the Defendant Internet Stores bear similarities and indicia of being related to one another, suggesting that the infringing products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated.

23.     Upon information and belief, Defendants deceive unknowing customers by using the Pine 9 Trademark without authorization within the content, text, and/or metatags of their websites and marketplace storefronts to attract various search engines on the internet looking for websites relevant to consumer searches for Plaintiff's Pine 9 branded products. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization tactics and social media spamming so that the Defendant Internet Stores listings show up at or near the top of relevant search results after others are shut down.

24.     Defendants' use of the Pine 9 Trademark and Works on or in connection with the advertising, marketing, distribution, offering for sale, and sale of the infringing products is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

25.     Defendants, without authorization or license from Plaintiff, knowingly and willfully used and continue to use the Pine 9 Trademark and Works in connection with the advertisement, offer for sale, and sale of the counterfeit products, through, inter alia, the internet. The infringing products are not Pine 9 branded products of the Plaintiff. Plaintiff did not

manufacture, inspect, or package the infringing products and did not approve the infringing products for sale or distribution. Each of the Defendants' Internet Stores offers shipping to the United States, including Indiana, and, on information and belief, each Defendant has sold counterfeit products into the United States, including Indiana.

26.     Defendants' use of the Pine 9 Trademark and Works in connection with the advertising, distribution, offer for sale, and sale of infringing products, including the sale of infringing products into Indiana, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming Plaintiff.

27.     Upon information and belief, Defendants will continue to register or acquire listings for the purpose of selling infringing products that infringe upon the PINE 9 Intellectual Property unless preliminarily and permanently enjoined.

**COUNT I**

**<u>COPYRIGHT INFRINGEMENT (17 U.S.C. § 501(a))</u>**

28.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 27.

29.     Plaintiff's Pine 9 Works have significant value and have been produced and created at considerable expense. Plaintiff is the owner of each original work, and all works at issue have been registered with the U.S. Copyright Office. *See,* **<u>Exhibit 1</u>**.

30.     Plaintiff, at all relevant times, has been the holder of the pertinent exclusive rights infringed by Defendants, as alleged hereunder, including but not limited to the copyrighted Pine 9 Works, including derivative works.

31.     Upon information and belief, Defendants had access to the works through Plaintiff's normal business activities. After accessing the Pine 9 Works, Defendants wrongfully

10

created copies of the Pine 9 Works without Plaintiff's consent and engaged in acts of widespread infringement through publishing and distributing the Pine 9 Works via online websites and digital markets in connection with the marketing of their counterfeit products. Indeed, every photograph used by Defendants is virtually identical to the original Pine 9 Works.

32.     Plaintiff is informed and believes and thereon alleges that Defendants further infringed Plaintiff's copyrights by making or causing to be made derivative works from the Pine 9 Works by producing and distributing reproductions without Plaintiff's permission.

33.     Defendants, without the permission or consent of Plaintiff, have published online infringing derivative works of the Pine 9 Works. Defendants have violated Plaintiff's exclusive rights of reproduction and distribution. Defendants' actions constitute an infringement of Plaintiff's exclusive rights protected under the Copyright Act (17 U.S.C. § 101, et seq.).

34.     Further, as a direct result of the acts of copyright infringement, Defendants have obtained direct and indirect profits they would not otherwise have realized but for their infringement of the Pine 9 Works. Plaintiff is entitled to disgorgement of Defendants' profits directly and indirectly attributable to their infringement of the Pine 9 Works.

35.     The foregoing acts of infringement constitute a collective enterprise of shared, overlapping facts, and have been willful, intentional, and in disregard of and with indifference to the rights of Plaintiff.

36.     As a result of Defendants' infringement of Plaintiff's exclusive rights under its copyrights, Plaintiff is entitled to relief pursuant to 17 U.S.C. § 504, and to recovery of its costs and attorneys' fees pursuant to 17 U.S.C. § 505.

37.     The conduct of Defendants is causing and, unless enjoined and restrained by this Court, will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated

or measured in money. Plaintiff has no adequate remedy at law. Pursuant to 17 U.S.C. §§ 502-503, Plaintiff is entitled to injunctive relief prohibiting Defendants from further infringing Plaintiff's copyrights and ordering that Defendants destroy all unauthorized copies. Defendants' copies, digital files, and other embodiments of Plaintiff's copyrighted works from which copies can be reproduced should be impounded and forfeited to Plaintiff as instruments of infringement, and all infringing copies created by Defendants should be impounded and forfeited to Plaintiff, under 17 U.S.C. § 503.

## COUNT II

## **TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

38.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 37.

39.     This case also concerns a trademark infringement and counterfeit action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered Pine 9 Trademark in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods. The Pine 9 Trademark is a distinctive mark. Consumers have come to expect the highest quality from Plaintiff's products provided under the Pine 9 Trademark.

40.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products in connection with Plaintiff's Trademark without Plaintiff's permission.

41.     Plaintiff is the exclusive owner of the Pine 9 Trademark. Plaintiff's United States Registration for the Pine 9 Trademark (**Exhibit 1**) is in full force and effect. Upon information and belief, Defendants have knowledge of Plaintiff's rights in the Pine 9 Trademark and are willfully infringing and intentionally offering counterfeit items bearing the Pine 9 Trademark. Defendants'

willful, intentional, and unauthorized use of the Pine 9 Trademark is likely to cause confusion, mistake, and deception as to the origin and quality of the counterfeit goods among the general consuming public.

42.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

43.     Plaintiff has no adequate remedy at law, and if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademark.

44.     The injuries sustained by Plaintiff have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offer to sell, and sale of counterfeit versions of Plaintiff's Pine 9 Products.

## COUNT III

## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125)

45.     Plaintiff hereby realleges and incorporates by reference the allegations set forth in paragraphs 1 through 44.

46.     Defendant's advertising, marketing, promotion, distribution, display, offering for sale, sale, and/or otherwise dealing in counterfeit versions of Plaintiff's products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiff or the origin, sponsorship, or approval of such products.

47.     By manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have actually offered and shipped goods in interstate commerce.

48.     Likewise, by manufacturing, importing, exporting, advertising, marketing, promoting, distributing, displaying, offering for sale, selling, and/or otherwise dealing in the counterfeit products, Defendants have and continue to trade off the extensive goodwill of Plaintiff to induce customers to purchase a counterfeit version of Plaintiff's products, thereby directly competing with Plaintiff. Such conduct has permitted and will continue to permit Defendants to make substantial sales and profits based on the goodwill and reputation of Plaintiff, which Plaintiff has amassed through its lengthy nationwide marketing, advertising, sales, and cumulative consumer recognition.

49.     Defendants knew or, by the exercise of reasonable care, should have known that their past, current, and continuing advertising, marketing, promotion, distribution, display, offering for sale, sale and/or otherwise dealing in the counterfeit goods has and will continue to cause confusion and mistake or to deceive purchasers, users, and the public.

50.     In addition, by using the Pine 9 Trademark in connection with the sale of counterfeit products, Defendants create a false designation of origin and a misleading representation of the fact as to the origin and sponsorship of the counterfeit product. By their use of Plaintiff's original photographs in association with the offer and sale of the counterfeit product, Defendants seek to further confuse the relevant public as to the source or sponsorship of their goods by Plaintiff.

51.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the counterfeit product to the general public is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

52.     As a direct and proximate result of Defendants' aforementioned wrongful actions, Plaintiff has been and will continue to be deprived of substantial sales of its genuine products.

53.     Plaintiff has no adequate remedy at law and, if Defendants' actions are not enjoined, Plaintiff will continue to suffer irreparable harm to its reputation and the goodwill of its brand.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

A.     That Defendants, their affiliates, officers, agents, employees, attorneys, and all other persons acting for, with, by, through, under, or in active concert with them be temporarily preliminary, and permanently enjoined and restrained from:

i.     Using the Pine 9 Trademark in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine product of Plaintiff, or is not authorized by Plaintiff to be sold in connection with the Pine 9 Trademark;

ii.     Passing off, inducing, or enabling others to sell or pass off any product as a genuine Plaintiff's product or any other product produced by Plaintiff that is not Plaintiff's or not produced under the authority, control, or supervision of Plaintiff and approved by Plaintiff for sale under Plaintiff's Trademark and associated with or derived from the Pine 9 Trademark;

iii.     Making, using, selling, and/or importing to the United States for retail sale or resale any products that infringe the Pine 9 Trademark;

iv.     Committing any acts calculated to cause consumers to believe that Defendants' counterfeit products are sold under the authority, control, or supervision of Plaintiff, or are sponsored by, approved of, or otherwise connected with Plaintiff, including without limitation through use of Plaintiff's original photographs and marketing text in connection with the offer or sale of counterfeit products;

v.      Further infringing the Pine 9 Trademark and damaging Plaintiff's goodwill;

vi.     Otherwise competing unfairly with Plaintiff in any manner;

vii.    Shipping (including drop-shipping), delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear the Pine 9 Trademark, or any reproductions, counterfeit copies, or colorable imitations thereof;

viii.   Using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other domain name or online marketplace account that is being used to sell or is how Defendants could continue to sell counterfeit products;

ix.     Operating and/or hosting websites at the Defendant Internet Stores of any other domain names registered or operated by Defendants that are involved in the distribution, marketing, advertising, offering for sale, or sale of any product bearing the Pine 9 Trademark or reproduction, counterfeit copy, or colorable imitation thereof that is not a genuine product or not authorized by Plaintiff to be sold in connection with the Pine 9 Trademark; and,

x.      Registering any additional domain names that use or incorporate any portion of the Pine 9 Trademark; and,

B.      That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

      i.      using the Pine 9 Trademark in connection with the distribution, advertising, offer for sale and/or sale of any product that is not a genuine product of Plaintiff's or is not authorized by Plaintiff to be sold in connection with the Pine 9 Trademark; and

      ii.      Shipping, delivering, holding for same, distributing, returning, transferring, or otherwise moving, storing, or disposing of in any manner products or inventory not manufactured by or for Plaintiff, not authorized by Plaintiff to be sold or offered for sale, and protected by the Pine 9 Trademark or any reproductions, counterfeit copies, or colorable imitation thereof; and,

C.      That Defendants, within fourteen (14) days after service of judgment with notice of entry thereof upon them, be required to file with the Court and serve upon Plaintiff a written report under oath setting forth in detail the manner and form in which Defendants have complied with any and all injunctive relief ordered by this Court;

D.      Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Alibaba, AliExpress, Amazon, Amazon, eBay, Shein, Shopify, Temu, Walmart, and Wish,; payment processors such as: Alibaba Group Holding Limited, AUS Merchant Services, Inc., and Alipay US, Inc. ("Alipay"); LianLian Global, LL Pay U.S., LLC, and Lianlian Yintong Electronic Payment Co. Ltd. ("LianLian"), Payoneer Global Inc. ("Payoneer"), PayPal Holdings, Inc. ("PayPal"), and Stripe Inc. ("Stripe"); social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, X (formerly Twitter); Internet search engines such as: Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all

webstores through which Defendants engage in the sale of counterfeit products using the Pine 9 Trademark; shall:

      i.     Disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit products using the Pine 9 Trademark, including any accounts associated with the Defendants listed on Schedule A;

      ii.     Disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeiting and infringing counterfeit product using the Pine 9 Trademark; and,

      iii.     Take all steps necessary to prevent links to the Defendant Online Stores identified in Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant Online stores from any search index; and,

E.     That each Defendant account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of Plaintiff's Trademark be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

F.     For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed the Pine 9 Trademark in its federally registered trademark pursuant to 15 U.S.C. § 1114; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

G.     For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 15 U.S.C. § 1117, at the election of Plaintiffs, in an amount to be determined at trial;

H.      In the alternative, that Plaintiff be awarded statutory damages pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the Pine 9 Trademark;

I.      That Defendants, their affiliates, officers, agents, employees, attorneys, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

i.      using the Pine 9 Works or any reproductions, copies, or colorable imitations thereof in any manner with the distribution, marketing, advertising, offering for sale, or sale of any product that is not an authorized Pine 9 Products or is not authorized by Plaintiff to be sold in connection with the Pine 9 Works;

ii.     passing off, inducing, or enabling others to sell or pass off any product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Pine 9 Works;

iii.    further infringing the Pine 9 Works and damaging Plaintiff's goodwill;

iv.     shipping, delivering, holding for sale, transferring, or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not authorized by Plaintiff to be sold or offered for sale, and which directly use the Pine 9 Works and which are derived from Plaintiff's copyrights in the Pine 9 Works; and

v.      using, linking to, transferring, selling, exercising control over, or otherwise owning the Defendant Internet Stores, or any other online marketplace account that is being used to sell products or inventory not authorized by Plaintiff which are derived from Plaintiff's copyrights in the Pine 9 Works;

19

J.      Entry of an Order that, upon Plaintiff's request, those in privity with Defendants and those with notice of the injunction, including any online marketplaces such as: Alibaba, AliExpress, Amazon, Amazon, eBay, Shein, Shopify, Temu, Walmart, and Wish,; payment processors such as: Alipay, LianLian, PayPal, Stripe, and Payoneer; social media platforms such as: Facebook, Instagram, Snapchat, TikTok, YouTube, LinkedIn, and X (formerly Twitter); Internet search engines such as Google, Bing, and Yahoo; webhosts for the Defendants Domain Names; and domain name registrars, that are provided with notice of the injunction, cease facilitating access to any or all webstores through which Defendants engage in the sale of infringing products using the Plaintiff's copyrights; shall:

      i.      disable and cease providing services for any accounts through which Defendants engage in the sale of products not authorized by Plaintiff which reproduce the Pine 9 Works or are derived from the Pine 9 Works, including any accounts associated with the Defendants listed on Schedule A;

      ii.      disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of products not authorized by Plaintiff which are derived from the Pine 9 Works; and

      iii.      take all steps necessary to prevent links to the Defendant accounts identified on Schedule A from displaying in search results, including, but not limited to, removing links to the Defendant accounts from any search index;

K.      For Judgment in favor of Plaintiff against Defendants that they have: (a) willfully infringed Plaintiff's rights in her federally registered copyrights pursuant to 17 U.S.C. §501; and (b) otherwise injured the business reputation and business of Plaintiff by Defendants' acts and conduct set forth in this Complaint;

L.     For Judgment in favor of Plaintiff against Defendants for actual damages or statutory damages pursuant to 17 U.S.C. §504, at the election of Plaintiff, in an amount to be determined at trial;

M.     In the alternative, that Plaintiff be awarded statutory damages pursuant to 17 U.S.C. §504(c)(2) of $150,000 for each and every use of Plaintiff's copyrighted works;

N.     That Plaintiff be awarded its reasonable attorneys' fees and costs; and,

O.     That Plaintiff be awarded any and all other relief that this Court deems equitable and just.

Plaintiff demands trial by jury as to all causes of action so triable.

Dated:                                  Respectfully submitted,

                                        Counsel for Plaintiff Pine 9 Solutions LLC

                                         /s/ Minh C. Wai, Esq.
                                        State Bar No. 22780-45
                                        Quintairos, Prieto, Wood & Boyer, P.A.
                                        9111 Broadway, Suite RR #2
                                        Merrillville, IN 46410
                                        Tel. (219) 387-0090
                                        Fax (219) 387-0091
                                        Email:  minh.wai@qpwblaw.com

                                        Of Counsel:
                                        /s/ James E. Judge
                                        Zareefa B. Flener (IL Bar No. 6281397)
                                        James E. Judge (IL Bar No. 6243206)
                                        Ying Chen (IL Bar No. 6346961)
                                        Flener IP Law, LLC
                                        77 W. Washington St., Ste. 800
                                        Chicago, IL 60602
                                        (312) 724-8874
                                        jjudge@fleneriplaw.com